21-12-661 Cajule Cedant v. United States of America. Looks like we have Mr. Barr for the appellant. Are you ready? And you've reserved five minutes for rebuttal, Mr. Barr. Yes, Your Honor. Good morning. May it please the Court. My name is Chad Barr, and I have the privilege to represent the plaintiff in this case, Cajule Cedant. Thank you for taking time to have oral argument on what we believe is a very important issue of procedure. In our brief, we've identified several issues that we believe support reversal. But the issues I want to address today are the three primary ones, which are whether the plaintiff's treating positions are 26-2AB witnesses or 2AC witnesses, whether the plaintiff's disclosure complied with 2AC, and whether the district court abused its discretion in I get those mixed up a lot. I suspect the bulk of our time will be in discussing the distinction between 2A, 2B, and A2C. So that's where I will begin this morning. What I'd like to do is start with what the district court held in this case, because I think that's important. Can I ask you just a quick question, maybe to get started? Is there any real dispute that if the witnesses are 2B witnesses, that the disclosures were insufficient? I would agree. I would agree with that. The primary issue, I believe that, so there's a substantive issue with regard to the reports. I think it's arguable whether it complied or not. I think the court was more concerned with the fact that there wasn't a witness testimony list. But I think it was pretty clear in the record that these weren't normally retained experts, so they didn't have a list to produce. So you think it really comes down to the categorization of these people as 2Bs or 2Cs? That's the bulk of the issue. The district court held that... Let me ask you another question before you go on. You referred both in your disclosures and just now in your argument to these witnesses as retained experts. What difference does it make whether they were retained, and what does that mean when you use that term? So I believe that when we look at all the cases that have addressed this issue since the rule was amended in 2010, and what they're looking for is they're looking to see whether or not these experts are professional experts. Whether they hold themselves out as being able to be retained for the purpose of giving expert testimony. In this case, our treating physicians are not retained experts, they're not specially employed experts. And that's important because those are the exact words that are used in A2B, which requires the more extensive disclosures. Is there any authority that makes that distinction between what I'll call specially retained experts and treating physicians who are giving the same testimony? I went back through everything, and I even did some additional research preparing for our argument. And I think if I would have given the court everything that answers your question, my brief would have been 800 pages long. Because I think the bulk, the weight of the authority on this issue, especially after 2010, says that our experts, our treating physicians, are not specially retained or under 2AB or A2B. Don't the 2010 amendments allow the district judge to say, even if you're not a retained expert, I think that you should provide more information? I don't believe that it does. I think what the rule does is it allows them to require less disclosure, not categorically change the characterization of the expert itself. So what the district court in this case did was it said, you are an A2B witness. It didn't say, we're requiring more disclosure under A2C. It said, we're categorizing your treating physician as an A2B witness. So this isn't a question of whether or not they required more information under AC. Why couldn't that just be a shorthand for the sort of information that the district judge thought was necessary given what the expert retained or not planned to testify about? We have to go strictly by what the district court said in its order. This is not a court of guessing. I can't hypothesize, neither can the court. The district court said what it said. It said that treating physicians who issue causation opinions are witnesses under A2B. So that's what we have to go on. So this court has to address whether or not that was a correct conclusion or not. We're not here saying the court required too much disclosure under A2C. We're saying the court miscategorized our witness under A2B. And so that's what we're here, that's what this court has to decide. We've listed in our, so we've already talked about what the rule says, A2B says that it only applies to witnesses who are retained or specially employed by a party to provide expert testimony. There's no evidence of this, that is what Doctors Katz or Gomez were employed in this case to do. They were treating physicians. They performed surgical procedures. They were planning to perform surgical procedures. They were employed to give treatment, not employed, but they were visited to provide treatment before this lawsuit was ever even filed. So we've got the language of the rule. We've got the committee notes. I think if you look back in the initial briefing, go through the committee notes that I referenced in there, and you'll see that the committee notes, which it's entirely appropriate for this court to look at when construing the rules, specifically delineate that positions and other healthcare professionals and employees of a party who do not regularly provide expert testimony are A2C witnesses, not A2B witnesses. We can look at what this court held. We can look at cases even before the 2010 amendment. We look at Prado versus Mauger. In that case, all we had was A2B witnesses. In this court, this court said an A2B witness is a witness who has no connection to the specific events underlying a case apart from his preparation for trial. He merely reviews reports and depositions provided by counsel and offers expert opinions. So we have that before the 2010 amendment. And then in 2021, after the 2010 amendment, this court, citing to the first district court in Downey concluded, or not concluded, but in a footnote, said that hybrid witnesses refer to certain types of individuals such as treating physicians who are exempt from the disclosure requirements for retained experts because their testimony primarily concerns personal observations made during the course of rendering their professional services. We can look at what other circuits have said. Downey versus Bob's discount furniture holdings. That I believe was the first case out of the first circuit that addressed this amendment. And this court, sorry, and that court said that in order to give the phrase retained or specially employed any real meaning, a court must acknowledge the difference between a precipitant witness who happens to be an expert and an expert who, without prior knowledge of the facts, giving rise to litigation, is recruited to provide expert testimony. That's straight out of the Downey case. Downey has been cited. I may be persuaded, speaking only for myself about the categorization, but what about the fact that the advisory committee notes from 93 say that by local rule, order, or written stipulation, the requirement of a written report may be weighed for particular experts or imposed upon additional persons who will provide written opinions. Do you disagree that the court could say even if you're not a retained expert, you need to provide this type of report? I wish I had the opportunity to brief that issue and research that issue, but I didn't because that wasn't the court's holding. I don't know the answer to that question, and it wasn't raised. The defendant didn't argue that the court could impose additional requirements. They just said that they're an A to B witness. I don't know the answer to that question, but I think it speaks volumes that the legislature felt the need to amend Rule 26 because, as this court's probably aware, there's a lot of gamesmanship going on with respect to discovery before the 2010 amendment, and that's what the 2010 amendment sought to clean up. We have a case where the court is categorically changing the nature of a witness from A to C to A to B. That's the issue that we're here on, and I can't answer the question on whether or not they can impose those additional requirements because that's not what the district court did in this case. I apologize for not having that answer for you. The Downey case has been cited favorably 153 times across all 13 federal circuits, and we can even look in district courts here in Florida, square at Key Biscayne Condo Association versus Scottsdale. That was a case where there was a public adjuster. In that case, the district court reasoned that the public adjuster was like a treating physician who was part of the ongoing sequence of events and arises at his causation opinion during treatment. The same conclusion, Arch Specialty versus BP Investment Partners out of the Middle District of Florida. That case concluded that service providers who examined a property following Hurricane Irma, but before the lawsuits were filed, were not 2AB experts. We see the same thing in Brackett versus National Specialty, Middle District Florida case. We can even look outside of Florida, Georgia District Courts, Klein versus Karasus, a Southern District of Georgia case. That case addressed this exact issue. The district court concluded that a treating physician who seeks to offer causation opinions is a A2C witness, not A2B witnesses. The same conclusions can be found over and over and over again across this country, Tennessee, Pennsylvania, Virginia, West Virginia, South Carolina, New York, Puerto Rico, 1st, 2nd, 4th, 7 circuits, and this court in SB Holdings. Now there are cases that go the other way. They relied on those in their briefs, but I would submit to you that specifically the Muzaffer versus Ross, Stress for Less, that's the case that, that's the first case that went the other way. That court, Judge Scola, respectfully, got it wrong. And the other cases that they rely on are all cases that predate the 2010 amendment to Rule 26. 4C, excuse me, A2C, I want to just say that the court didn't rule on that issue. So if this court is inclined to address that issue, I believe it needs to send that issue back to the district court. If it finds that it's, that our treating physicians are A2C witnesses, the district court needs to conclude if the court believes that's an issue, because that's, and we brought it up just because they brought it up in their summary judgment motion, and I didn't want to have to deal with a tipsy coachman argument in my reply brief. So we hit it on the front end. But if that's an issue the court thinks needs to be addressed, then it needs to go back to the district court. And lastly, and I know I'm running into my rebuttal time, but I just, real briefly, we hit all three or four of the factors, depending on if you address the fourth factor that the northern district addresses. But we hit all of the factors for additional time. The testimony is essential. Without these treating physicians, we have no other causation expert. Good faith belief. This case turned on a $300,000 medical injury case where my client's car was flipped upside down by a postal driver who admitted that he ran the red light, or stop sign. This case turned on whether or not, a good faith dispute on whether or not my client's treating physicians were A2B or A2C witnesses. That is the antithesis of cases being decided on their merits. The district court abused its discretion when it refused to allow us additional time to comply and this court will have to decide whether our witness is an A2B or A2C witness. So I'll reserve the last of my time for rebuttal. Thank you. Thank you. Thank you.    Thank you. Thank you. Thank you. Thank you. Mr. Crown. Thank you, Your Honor. May it please the court, Nicholas Crown for the United States. With the court's indulgence, I'd like to start by taking a step back and reviewing how this case got to this position. At the outset of the litigation, the district court issued a scheduling order that's docket 15 in the record, setting out very clearly that if any expert in this case was going to testify about causation, they had to provide a full report under Rule 26A2B. That's undisputed. And the plaintiff understood those requirements but let the deadline pass and it was actually government counsel who alerted the plaintiff to the deficiency and told them, you're not compliant with the rule. It requires full reports. And again, plaintiff agreed. In fact, plaintiff filed a motion to extend the deadlines and stated twice in that motion to the district court that the reason he needed more time was so that his experts could provide those full expert reports under A2B. And after the district court denied that first extension motion, plaintiff doubled down, filed a motion for reconsideration, again, making the same exact argument. He needed more time for full reports. And after that, the plaintiff submitted reports, served them on government counsel under the disclosure captioned A2B. Let me ask you a question because I recall all of this and it seems to me that it might have some bearing on sort of the good faith defense that he was relying on here at the end of his presentation. But as to the categorization issue, is it your contention that the district court used the proper standard in categorizing and distinguishing 2Bs from 2Cs? I mean, when the district court says, when a treating physician ventures beyond observation and diagnosis, my paraphrase, and includes opinions on causation, he's a 2B witness. That doesn't sound right to me because 2B, as I read it, sounds like it's about the purpose of the testimony, not about the substance so much of the testimony. Well, just to push back a little bit on that premise, Judge Newsom, I think the district court was right and it's actually consistent with all the circuit cases that have been cited in both briefs. And as I understand the colloquy today, plaintiff might be arguing something different. But I had understood the briefs to agree that really the test is for treating physicians, if they're offering opinions that were reached in the course of treatment, that's the lenient C disclosure. If they're going beyond that, that's an A2B disclosure. Where do you find that distinction in the rule? Set aside the cases, but where do you find that distinction in the rule? As interpreted by the cases, I think that's in the specially retained or employed language. And that's actually- Well, it doesn't say specially retained or employed. It says retained or specially employed. Excuse me, retained or specially employed. And I think actually the Downey case that the plaintiff cited again today, that's the first circuit decision. Judge Salio goes through the rule very carefully. They drop a footnote, footnote five, that recognizes this exact situation. And it says there might be times when someone is retained or employed at the outset to provide opinions that are going to be the more, excuse me, they're not retained and they're not employed to provide opinions. But then they venture beyond just their precipient factual knowledge. That also covers expert testimony, but then they start going into something that really does fall into the heartland of a 2B witness. And that's what we have here. And I think the Musafar decision sets that out. And I would just point out, Musafar came up as a motion for clarification. And I would submit the district court did hear exactly what we want district courts to do, to resolve any confusion there might be regarding A2C or B and set at the outset if you're going to testify about causation, it's my conclusion that goes beyond the precipient course of treatment. And that's going to delve into 2B territory, so you have to provide a full expert report. The difficulty I'm having, and it really goes to the question that Judge Grant has asked you about the text of the rule, is that the text of the rule seems to focus on the intent of the retention in the first instance, not on what sort of happens down the road. I mean, you might have intended to retain this under the district court's analysis. If you intended to retain the witness for one purpose and he ends up somewhere different, then that sort of changes the application of the rule. But the rule seems to say, for what purpose was this person retained in the first instance? And it could be either A or B or both, potentially, right? I think that's right. And I think this is a situation where it could be both. And if you actually look at the reports that were disclosed under the caption A2B, the plaintiff's experts actually talk about their treatment of the symptoms. And that all falls into the C category. It's just saying, here are what the symptoms were, and here's the treatment we provided. That's expert testimony, but subject to the more lenient standard. And if you look at those reports, I would submit there is no actual opinion on the relevant causation question. And I would submit that's because that's not the type of conclusion they would reach in the course of their treatment. And that's precisely why it's the application of the rule that matters so much, that someone might be initially retained or brought on to offer their recipient factual knowledge, but then they start delving into expert testimony that delves beyond the course of treatment. And I think this gets back to you. Is it important how that person is categorized at the beginning, or is it important what report the court requires them to give? Because do you disagree that the court can require greater disclosures, even from a non-retained witness? I do not disagree. I agree. You shouldn't ask it in the negative. Yes. Judge Green. Can the court require additional disclosures from a non-retained expert witness? Absolutely. And for the exact reason you pointed out in your question. That's exactly what the committee report says, that, of course, the requirement can be waived, but on the flip side, it can be imposed on a witness who otherwise would not be required to provide a full report. And I would submit, yes, that's from the 1993 committee notes. But if you look at the text of the rule, again, they both start with the exact same language, unless otherwise stipulated or ordered by the court. So in 2010, when the committee and then the Supreme Court adopts the change, they use that exact same language to bring it in line. So both A2B and A2Cs are defaults. But of course, the district court has discretion to play in the joints and impose requirements or waive requirements one way or the other. And I would submit any way you look at this, that's basically what the district court did here. So we disagree with the premise that this court has to decide in the abstract the question of A2B versus C, because here we have an unequivocal scheduling order that sets out the requirements. Plaintiff was aware of the requirement, agreed with it, and in fact said he needed more time in order to comply with it. And I think if you wanted another textual hook, Judge Grant, Rule 16B itself, because this is a scheduling order, 16B applies. That also provides that a district court can, among other things in the scheduling order, set out the extent of the discovery. So again, that gives the district court some discretion to change or impose requirements or waive requirements. Could the district court have said, I require a full expert report for every witness, whether or not they're offering expert testimony? I think that would be a tougher sell. And again, that might be with the interplay of the federal rules of evidence. So if it's a 701 witness who's giving lay testimony, all of the rules dealing with expert reports, Rule 26, deal with 702, 703, and 705. So I think that would be a clear line, whether it's an expert or not. And in that sense, that might be an issue that would be a much more difficult case than what we have here, when the district court actually applied what we understand to be pretty consensus circuit law, saying if an expert of treating physician is going beyond the course of treatment, as we think that the experts here did, then a full report would be required. Could a district court say a full report is required for any expert and every expert, without order of blanket rule as a matter of local rules? I think that could be the case. And it might just depend on the circumstances. I think that would be fair. And the reason I say that is I think of patent cases. And in those kind of cases, it's very important. It's very intricate. It's very scientific. And then it could make sense to have every single expert provide a full report, just so everyone knows what's at play, what the science is, and what the opinions actually are. And if I could, I think that also just punctuates another important point.  It's so important because it does give the opposing sides, both sides, really, notice of what the expert opinions are going to be. And that way, and as the district court found in its second summary judgment order, when it found the specific prejudice to the government, it avoids the situation where the opposing side has to guess not only at what the opinions of the expert are going to be, but what the underlying facts are. And here, we just don't have that. And I would submit that the prejudice is actually exacerbated. It's certainly no answer to say that the other side could simply depose an expert who hasn't provided a court-ordered report, because Rule 26B4E imposes the cost of a deposition, including the expert's time in preparing for the deposition and responding to the deposition request. It puts that cost on the party seeking the discovery. So I think that just underscores there is real prejudice here. And that's why the district court here did exactly what we would want district courts to do in the mine run of cases, whichever way it comes out on the A2B or A2C questions, it discloses to the parties at the outset. And just to put a finer point on it, in the original scheduling order, the district court invited any comments from the parties, if you have any issues or prefer see any trouble complying with this order, to submit a status report listing those out. And when I looked at it, I didn't see anything from the plaintiffs submitting that there was any problem with providing full reports until after the district court had denied the motion for reconsideration once the deadline had already passed. Could a treating physician ever render an opinion on causation and have it not be expert testimony that would require 2B disclosures? Because I could envision a situation where there's an accident, the person comes in the next day, and you have soft tissue injuries, and the physician says, I've examined this guy in the course of treating him, and these injuries were caused by the accident. With the caveat that's not this case, I could envision a case where that might be true. The example I had in my mind was maybe carpal tunnel syndrome, where the treatment might actually require you to know what's causing the injury so you know how to fix it, so that you know not to use your mouse or to get an ergonomic mouse instead. That might be a case where someone in the course of treatment is providing causation opinions, and it would fall within the C category of reports. But that's just not the case we have here. The plaintiff walked away from the accident. He didn't present to the two treating physicians here, who I understand to be the ones that would provide the opinions on causation, until months later. And if you look at those reports, they're at docket 59-1 and 59-2, there is no opinion on causation in the course of treatment. The closest the plaintiff's experts get is that there is a causal relationship between the current complaints, the symptoms the plaintiff has, and the injuries that he identified. But that doesn't get us to the relevant question for a negligence claim on causation, whether the collision caused the injuries. That's the predicate question that has to be answered for the plaintiff to prevail under federal law. I'm not asking you to agree for purposes of this case, but couldn't it be that after a car accident, say, a physician would conclude that the car accident caused the injuries, but wouldn't put it in the immediate doctor's report because why? It seems pretty obvious. I don't know the answer to that question, Judge Grant, to be frank with you. I suppose it's possible that could happen. But I would submit that's exactly why we would want a district court, if we're going to get to litigation, to do precisely what the district court did here. If we don't know why it's not in the report, or any doctor's notes, we're going to require a disclosure one way or the other, either under A2B or A2C. And here, the district court was unequivocal. It's got to be an A2B full equitable report. And I would just reiterate that this case comes up to the panel in an abuse of discretion posture. And of course, this case, or the district court's judgment, can be affirmed on any basis that's apparent in the record. So I would disagree with my friend on the other side who says that he wasn't given the to impose requirements that otherwise might not be required. Again, this is abuse of discretion. The court can affirm on any basis apparent in the record. The last thing I would like to say, unless the panel has any further questions, is I think this case falls within the heartland of all the circuit precedent that has been canvassed in the briefs. This court's decision, of course, on published SB holdings, I think just reiterated the basic principle that when the opinions are outside of the course of treatment, then that could be an instance where a full A2B report is required. And here, I think if you look at those expert reports, all the records, it's pretty clear that these opinions were not part of the course of treatment. And even if they were, the district court had full discretion to impose requirements under Rule 26 and Rule 16B to require full reports. And he did so at the very beginning of the case. And in fact, the plaintiff, in opposition to the original summary judgment motion, asked the court, even if you find that my reports are deficient, please give me more time. And the district court gave plaintiff exactly what he asked for. So in terms of deciding this case on the technicalities or on the merits, that's exactly what the district court did. The first summary judgment order, it said, I have a preference to decide on the merits. I'm giving you an entire month to provide full reports. And the plaintiff decided to submit the exact same disclosures that had already been alerted to him as deficient. So I think it wouldn't have made sense for the court to have given the plaintiff an entire month to comply with the scheduling order if all he had to do was submit the same disclosures that were already warned to him that could be the subject of sanctions. So if the panel does not have any further questions, we would ask that this court affirm. Thank you. Judge Newsom, you hit the nail on the head. It's the intent of the retention. That's what the rule is concerned with. We can't go beyond the plain, unambiguous text of the rule. The rule says what it says, employed or specially retained. There's no evidence in this case of that. What about the portion of the rule that your adversary points to unless the court orders otherwise? I mean, that's Judge Grant's, I don't want to call it a hang up, but that's your big question of the day, right? And I think we have to go back to the committee notes. And I sat down over here and I hope I wasn't a distraction, but I wanted to underline and highlight what the committee notes say about 2AC, sorry, A2C, I'll get it eventually. This disclosure is considerably less extensive than the report required by A2B. Courts must take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel as those who have. So the committee notes, and I believe anticipates this exact argument, which is, well, the court could require a A2B report. But I think the committee notes are saying, you can't go that far. You cannot go that far. And I believe the, unless the court orders otherwise, is talking about a reduction because that same language is included in A2B. So what additional disclosures would the court be requiring besides an expert report? So I think A2B using that same language is saying the court can require less or the parties can stipulate to produce less, but the court can't require more. So when we go to A2C and see that same language in conjunction with the committee notes, the court can't require an A2B report from an A2C witness because it goes beyond the committee notes. Is it possible though, and I promise I'm not surfering, looking at Route 26, is it possible though that the unless otherwise ordered by the court in 2B means that the court might require less and in 2C might mean that the court might require more? I can't see how you would look at them differently. Oh, no, no, no. I mean, I just think it gives the court discretion. I mean, I think this is Judge Grant's question. I mean, it just, it sets a, 2B and 2C set default rules that allow the court some. I understand that. And we spent a lot of time talking about it, but I think we go back to what did they argue? They did not argue that the court had leeway to require this. They argued that the treating physicians are A2B witnesses. That's what they argued. What did the court hold? The court didn't hold. I'm allowed to require additional disclosures under A2C. The court held that these are A2B witnesses. They did not provide a report and a testimony list. So that's what we're here with. And I think there probably can be another case that comes before this court about the scope of a court's required disclosures under A2C, but that's not this case. So we're stuck with what was argued and what was ruled on and what the conclusion was. And I just wanted to touch on the standard. We're talking about interpretation of a rule. It's not an abuse of discretion standard. We're talking about how to categorize a witness. It's a de novo review. And lastly, the – If it's a de novo review, though, then if the rule allows different – allows discretion, as Judge Newsom was saying, then why wouldn't – why couldn't we come to that conclusion de novo even if that hasn't really been focused on by the parties? Because it's not – and I'm not being facetious, and I'm certainly not trying to repeat myself, but – because I don't believe it's an issue that is before the court. I don't think that particular question is before the court. And I – So you think the question of what kind of witness this was at the outset is before the court? And then what the court could have required from whatever type of witness that is is a different question? Whether the scheduling order complies or is in contrast or conflict with the rules I think is another question, which is not before the court. Okay. And I just want to say with regard to the scheduling, and I'll conclude on this point, but with regard to the additional time, I think it's important to go back and look at the first summary judgment order because defendant argues, well, they knew they were not compliant and they had an additional 30 days. They didn't do anything. But the problem is the court didn't tell us why it was denying their motion for summary judgment because the arguments were made about these witnesses being A2B and A2C witnesses in the motion, the response, and the reply. The district court just said, I'm denying the plaintiff's motion – or the defendant's motion. It didn't say why. It didn't say why there was a deficiency. So trial counsel went back and tried to – and tried to comply. It was trying to comply. It didn't have a report. You can't make a not-retained, not-employed expert give a report. You just – you can't do it. And that's what the committee notes are referring to. So just in the sense of – Although, I mean, I do think that goes back to the question because I – to the extent you're arguing that, I think at least there's an argument that you can make a non-retained expert give a more complete report. Perhaps. And I believe that's a question for another day. That's just – I don't know how – I don't know how we address that in this case. Thank you. We ask the court to reverse. Thank you. Thank you.